IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-698

No. COA20-323

Filed 21 December 2021

Iredell County, No. 19CRS053269, 19CRS001919

STATE OF NORTH CAROLINA

v.

MICHAEL CONNOR LAMP, Defendant.

Appeal by Defendant from judgment entered 19 December 2019 by Judge Joseph N. Crosswhite in Iredell County Superior Court. Heard in the Court of Appeals 24 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Deborah M. Greene, for the State.*

*Mark L. Hayes for the Defendant.*

JACKSON, Judge.

¶ 1     Michael Connor Lamp ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of failing to register as a sex offender and his stipulation that he attained the status of a habitual felon. We hold that Defendant has failed to demonstrate reversible error.

## I.     Background

¶ 2     In 1999, Defendant was charged with second-degree rape. In exchange for

pleading guilty to second-degree kidnapping (instead of rape), Defendant received a sentence of 21 to 26 months of supervised probation. The sentencing court found that the offense was a reportable conviction involving a minor under N.C. Gen. Stat. § 14-208.6, and ordered that Defendant register as a sex offender.

¶ 3        On 25 June 2019, Defendant executed a Sex Offender Change of Information Form and submitted it to the Iredell County Sheriff's Office. On the form, Defendant represented that his address was 1010 Foxcroft Lane, Building 604, Apartment A6, in Statesville, North Carolina, from 21 June 2019 until 25 June 2019. Defendant had previously been registered as homeless, and he also signed the homeless log at the Sheriff's Office on 25 June 2019, in addition to executing the change of address form, indicating that as of 25 June 2019, he was once again homeless.

¶ 4        At trial, H. Daelhouser, the property manager for the apartments on Foxcroft Lane, testified that Defendant was not a tenant of the apartments. However, Ms. Daelhouser did have occasion to meet Defendant on 25 June 2019 at Building <u>602</u>, Apartment A6. Ms. Daelhouser went to check on Apartment A6 in Building 602 that day. Although Defendant was not on the lease, he answered the door. Ms. Daelhouser informed him that an eviction had proceeded to the point that the locks were going to be changed the following morning. Defendant replied that he knew, and that he would be gone by then.

¶ 5        The next day, Deputy Cody James visited Building 604, Apartment A6—the

address Defendant had provided—attempting to verify that Defendant lived there. The gentleman who answered the door was not Defendant, and he told Deputy James that Defendant did not live there. Deputy James learned during her visit that Building 602, Apartment A6, and Building 604, Apartment A6, are adjacent to one another, and while they are separate buildings, they are adjoined by a breezeway.

¶ 6 On 9 September 2019, Defendant was indicted for submitting false information to the Iredell County Sheriff's Office that he was required to submit as a sex offender and for knowingly residing within 1000 feet of a public school. Specifically, he was charged with "submitting 1010 Foxcroft Lane, Building 604, Apartment A6, Statesville[,] as his residence when, in fact, he did not reside there[,]" and with "knowingly resid[ing] within 1000 feet of . . . Statesville Montessori School, a public school[.]" He was also indicted for attaining the status of a habitual felon.

¶ 7 The matter came on for trial before the Honorable Joseph N. Crosswhite in Iredell County Superior Court on 17 December 2019. The State elected not to proceed on the charge of knowingly residing within 1000 feet of a public school. Judge Crosswhite presided over a two-day trial. Defendant moved at the close of the State's evidence to dismiss the charge for violation of N.C. Gen. Stat. § 14-208.11(a)(4) on the ground that the evidence of his intent to deceive anyone by submitting false information about his whereabouts on 25 June 2019 was insufficient. The trial court denied the motion. Defendant chose not to present evidence and once again moved

to dismiss the charge.

¶ 8 The jury's deliberations went into a third day, with the jury returning a verdict of guilty on the substantive offense and Defendant stipulating to attaining the status of a habitual felon after the jury returned its verdict. The trial court determined Defendant to be a prior record level five offender, and sentenced him to 101 to 134 months in prison

¶ 9 Defendant entered notice of appeal in open court.

## II. Analysis

¶ 10 In his sole argument on appeal, Defendant contends that the trial court erred in denying his motion to dismiss because the evidence was insufficient that he provided an incorrect address to the Sheriff's Office, or that any address he provided was provided willfully, with deceptive intent. We disagree.

### A. Standard of Review

> When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. The defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when it is consistent with the State's evidence, the defendant's

> evidence may be used to explain or clarify that offered by the State. Additionally, a substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight, which is a matter for the jury. Thus, if there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.
>
> The test of the sufficiency of the evidence on a motion to dismiss is the same whether the evidence is direct, circumstantial, or both. Where the State's evidence of the defendant's guilt is circumstantial, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.

*State v. White*, 261 N.C. App. 506, 510, 820 S.E.2d 116, 119-20 (2018) (internal marks and citations omitted).

**B. Misrepresentations Are Circumstantial Evidence of Deceptive Intent**

North Carolina General Statute § 14-208.11(a)(4) "is a part of North Carolina's Sex Offender Registration Act ("the Act"), codified at N.C. Gen. Stat. § 14-208.5 *et seq.*" *State v. Pressley*, 235 N.C. App. 613, 616, 762 S.E.2d 374, 376 (2014). N.C. Gen. Stat. § 14-208.11(a)(4) prohibits "[a] person required . . . to register [as a sex offender] [from] willfully . . . [f]org[ing] or submit[ting] under false pretenses the information or verification notices required under" the Act. N.C. Gen. Stat. § 14-208.11(a)(4) (2019). Section 14-208.11(a)(4) thus "criminalizes the provision of false or misleading

information on forms submitted pursuant to the Act[,]" *Pressley*, 235 N.C. App. at 617, 762 S.E.2d at 377, and violation of § 14-208.11(a)(4) is a Class F felony, N.C. Gen. Stat. § 14-208.11(a)(4). "[A] person is guilty of submitting information under false pretenses [under § 14-208.11(a)(4)] if the person (1) stands convicted of a sexual offense requiring him to register as a sexual offender and (2) submits information under false pretenses to the sexual offender registry." *State v. Parks*, 147 N.C. App. 485, 489, 556 S.E.2d 20, 23 (2001).

> The clear and unambiguous purpose of the Act is "to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others as provided in this Article."

*Pressley*, 235 N.C. App. at 617, 762 S.E.2d at 377 (quoting N.C. Gen. Stat. § 14-208.5).

¶ 12          A false pretense has been defined as "an untrue representation . . . calculated and intended to deceive." *Parks*, 147 N.C. App. at 489, 556 S.E.2d at 23. Generally speaking, "the false pretense need not come through spoken words, but instead may be by act or conduct." *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001) (citation omitted). Deceptive intent is seldom proven by direct evidence, and therefore, must ordinarily be inferred from the circumstances. *State v. Bennett*, 84 N.C. App. 689, 691, 353 S.E.2d 690, 692 (1987). Likewise, "willfulness is a mental

state . . . [that] often must be inferred from the surrounding circumstances rather than proven through direct evidence." *State v. Crockett*, 238 N.C. App. 96, 106, 767 S.E.2d 78, 85 (2014). "In determining the absence or presence of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged." *State v. Braswell*, 225 N.C. App. 734, 740, 738 S.E.2d 229, 233 (2013) (internal marks and citation omitted).

¶ 13        Inconsistencies in the record evidence before the trial court when denying Defendant's motion to dismiss created ambiguities susceptible of different, conflicting interpretations—triable issues of fact the court correctly ruled should be submitted to the jury to answer by its verdict. The evidence before the trial court included: (1) on 25 June 2019, Defendant represented both that he resided at 1010 Foxcroft Lane, Building 604, Apartment A6, and that he was homeless—two things that could not both be true; (2) that very same day, Defendant was seen at Building 602, Apartment A6, not Building 604, Apartment A6, where he represented to the Sheriff's Office he resided, suggesting that he did not, in fact, reside in Building 604 despite representing that he did (but which could also tend to show that he resided in neither place, and was homeless on 25 June 2019); and (3) on 26 June 2019, an occupant of the apartment where Defendant claimed he lived informed a deputy that Defendant did not live there. We hold that a reasonable juror could have inferred from the evidence that Defendant willfully misrepresented to the Sheriff's Office that he lived

in Apartment A6 of Building 604 on 25 June 2019.

¶ 14      When a person is required to register as a sex offender, providing an incorrect address on the forms used by the Sheriff's Office to record and monitor compliance with the requirement to register is a misrepresentation that constitutes circumstantial evidence of deceptive intent, as well as the mental state of willfulness. *See Pressley*, 235 N.C. App. at 617, 762 S.E.2d at 377; *Crockett*, 238 N.C. App. at 106, 767 S.E.2d at 85. On a motion to dismiss at the close of the State's evidence, this evidence qualifies as substantial evidence "to support a finding that the offense charged has been committed and that the defendant committed it . . . [because] [t]he test of the sufficiency of the evidence on a motion to dismiss is the same whether the evidence is direct, circumstantial, or both." *White*, 261 N.C. App. at 510, 820 S.E.2d at 120 (internal marks and citations omitted). While this evidence of Defendant's willful state of mind and deceptive intent was circumstantial, deceptive intent is seldom proven by direct evidence, *Bennett*, 84 N.C. App. at 691, 353 S.E.2d at 692, and willfulness too "often must be inferred from the surrounding circumstances rather than proven through direct evidence[,]" *Crockett*, 238 N.C. App. at 106, 767 S.E.2d at 85. Altogether, "a reasonable inference of [D]efendant's guilt may be drawn from the[se] circumstances." *White*, 261 N.C. App. at 510, 820 S.E.2d at 120. The jury also heard directly from Deputy James that she believed the Defendant was trying to trick her and avoid supervision by providing an incorrect address. The jury

also heard of a potential motive that by providing an address on 25 June 2019, this gave Defendant an excuse from signing the homeless log on 21 June 2019 and 24 June 2019. Accordingly, viewing the evidence in the light most favorable to the State, and giving the State the benefit of every reasonable inference arising from the evidence, as we must on review of the denial of a motion to dismiss, *see id.*, we hold that the evidence that Defendant was guilty of violating N.C. Gen. Stat. § 14-208.11(a)(4) by submitting false information about his whereabouts to the Iredell County Sheriff's Office on 25 June 2019 was sufficient to go to the jury.

### III.    Conclusion

We therefore hold that Defendant has failed to demonstrate any error.

NO ERROR.

Judge INMAN concurs.

Judge DILLON dissents by separate opinion.

DILLON, Judge, dissenting.

In 1999, Defendant pleaded guilty to attempted kidnapping of a minor for conduct he engaged in when he himself was 17 years of age. Based on this conviction, he was required to register as a sex offender. He has not been charged for committing any sex offense since. In any event, twenty years after his attempted kidnapping conviction, Defendant was indicted and convicted by a jury for misregistering willfully, under false pretenses his place of residence for a certain five-day period in June 2019. For this crime and for attaining habitual felon status, he was sentenced to a term of imprisonment exceeding eight years.

On appeal, he argues that his motion to dismiss should have been granted. It is our duty on appeal to sustain the jury's verdict *so long as* the evidence presented supported a reasonable inference of their findings, even if we, as judges, would have reached a different verdict. In this case, though, while one can reasonably infer from the State's evidence that Defendant provided an incorrect address and perhaps did so intentionally, I cannot find any way from which it could be reasonably inferred that Defendant's misreport was done willfully and under false pretenses.

In other words, as explained below, while one could have *suspicions* why Defendant might have misreported his address for the five-day period in question, the State's evidence simply does not create a *reasonable inference* explaining Defendant's illicit purpose or how his misreport could have possibly deceived the Sheriff's Office or anyone else. Therefore, in *this* case before us, I believe it is our

duty to reverse the judgment, as I believe the trial court should have granted Defendant's motion to dismiss at the close of the State's evidence. I, therefore, respectfully dissent.

## Analysis

¶ 19        Section 14-208.11(a) of our General Statutes enumerates ten different ways the State can show that a sex offender has unlawfully failed to properly register his place of residence. In this case, the State chose to indict Defendant under subsection (4) of that statute.

¶ 20        Subsection (4) proscribes the misreporting by a convicted sex offender of his place of residence, but only if done so "willfully" and "under false pretense." N.C. Gen. Stat. § 14-208.11(a)(4). In other words, it is not enough for the State to produce evidence showing that Defendant registered a false address or even that he did so *knowingly*. Rather, as explained below, it is the State's burden to produce evidence that raises at least "a reasonable inference" that Defendant acted *willfully*, *under false pretenses*, that is, evidence from which the illicit purpose motivating Defendant to misreport can be reasonably inferred. *See Kinlaw v. Willetts*, 259 N.C. 597, 604, 131 S.E.2d 351, 355 (1963) ("To carry [a] case to the jury the [party with the burden of proof] must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts.").

¶ 21        Our Supreme Court has held that the word "willfully" as used in a criminal

statute means "something more than an intention to commit the offense. It implies committing the offense *purposely and designedly in violation of law.*" *State v. Stephenson*, 218 N.C. 263, 264, 10 S.E.2d 819, 823 (1940) (concluding evidence was insufficient that the defendant's acted willfully in making a misrepresentation) (emphasis added). And "[w]illfulness is an essential element which the fact-finder must determine, *often by inference.*" *State v. Ramos*, 363 N.C. 352, 355, 678 S.E.2d 224, 226 (2009) (citing *Stephenson*) (emphasis added).

¶ 22        The phrase "false pretenses" is similar to "willful." Our Court, construing subsection (4) of Section 14-208.11(a), has held that "false pretenses occurs when one makes an untrue representation to another that is *calculated and intended to deceive.*" *State v. Parks*, 147 N.C. App. 485, 489, 556 S.E.2d 20, 23 (2001) (emphasis added). "False pretenses" has been similarly defined by our Supreme Court in the context of other criminal statutes. For instance, interpreting Section 14-100 which proscribes obtaining property by false pretenses, our Supreme Court defined a false pretense as a misrepresentation which "is calculated to mislead, and does mislead[.]" *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001) (quoting *State v. Dixon*, 101 N.C. 741, 742-43, 7 S.E. 870, 871 (1888)).

¶ 23        Here, the indictment alleges that on Tuesday, 25 June 2019, Defendant misreported to the Sheriff's Office that he had moved into Building 604, Unit 6A of a particular apartment complex the previous Friday, 21 June, and that he did so

willfully, under false pretenses. Again, while the State put on evidence from which it could be reasonably inferred that he, in fact, did not live in Building 604 (but rather in Building 602), I cannot understand how one could reasonably infer from that evidence that Defendant misreported for some illicit purpose or, otherwise, in an attempt to deceive the Sheriff's Office. I have considered the motive argued by the State and other possible motives suggested by the majority and otherwise that Defendant may have had. But, as explained below, the State's evidence simply falls short of creating a reasonable inference as to any of these motives/purposes.

1. *The evidence does not create a reasonable inference that Defendant misreported for the purpose of avoiding supervision by the Sheriff's Office.*

The State's main theory at trial and on appeal regarding Defendant's willfulness/false pretense motive was that Defendant misreported his address *for the purpose of avoiding supervision* by the Sheriff's Office. In its brief, the State explains that Defendant—knowing that the Sheriff's Office would be aware that the occupants of Building *602*, Apt. A6 were being evicted, as it was that Office's duty to execute on the eviction—lied about his address (by reporting Building 604 as his address) to avoid having to report every other day as a homeless offender, stating as follows:

> The Iredell County Sheriff's Office was evicting the occupants of 602-A6 on 26 June 2019. [The deputy] testified that Defendant's behavior led him to believe that Defendant did not want to be supervised. By providing 604-A6 as his address, Defendant could continue to avoid having to report to the Sheriff's Office three times a week to sign in as homeless.

In other words, Defendant misreported to deceive the Sheriff's Office into thinking that he was living in Building 604 indefinitely. However, the State's own evidence offered at trial **<u>conclusively</u>** belies the State's theory. Specifically, the State's evidence showed that Defendant informed the Sheriff's Office that he no longer lived in any apartment unit by signing the homeless log, as follows:

A deputy testified that for periods when Defendant was *not* homeless, he must report his address to the Iredell County Sheriff's *within three business days* <u>after</u> he moves in. And for periods when he *is* homeless, he must sign the homeless log at the Sheriff's Office at least every other business day <u>during</u> these periods of homelessness.

The State produced the reporting logs from the Sheriff's Office that showed that Defendant signed the homeless log on Monday June 17 and again on Wednesday June 19, representing that he was homeless during this period. He would have been required to sign the homeless log again that Friday June 21 if he was, in fact, still homeless on that day. However, Defendant did not report in again until the following Tuesday June 25. (It was this period, between June 21-25 for which Defendant was convicted for misreporting his address.) On that day, Tuesday June 25, he reported *two* changes in his residential status. First, he reported that he *had been living* in Building *604*, Unit 6A since the previous Friday June 21, a report made within three business days. Second, he signed the homeless log, indicating to that, as of that day,

Tuesday June 25, he was again currently homeless, no longer living in the apartment.

¶ 27 The apartment manager testified for the State that the complex was seeking the eviction of anyone living in Building *602*, Unit 6A; that on Tuesday June 25, she knocked on the door of that unit; that Defendant answered the door; that she told him that the occupants were being evicted; and that Defendant told her that he and his friend would comply, indicating that they would be moving "their" belongings out.

¶ 28 The State also called a deputy who testified that he went out to the complex on Wednesday June 26 to confirm that Defendant was living in Building 604, as he had reported the previous day. (The deputy was obviously unaware that Defendant had also reported the previous day that he was no longer lived at the apartment complex.) The deputy stated that Defendant was not found in Building 604; that he spoke to the manager, who told him of her encounter with Defendant the prior day in Building 602; and that there was no indication that Defendant was still living in Building 602.

¶ 29 I simply do not see how the State's evidence shows that his misreport was done for the purpose of avoiding supervision. He made his misreport timely (within three business days of moving in). He signed the homeless log timely (as soon as he was again homeless). Though he misreported the building number, this misreport could not have been made to avoid supervision, as he had already moved out and had already accurately reported that he was again homeless. The majority suggests that the two reports, being made on the same day, were inconsistent. However, the State's

own evidence shows that Defendant was simply following the rules in making the two reports. It is true that the Sheriff's Office did not know where he was living over that weekend. But the Office's reporting rules did not require Defendant to report that he had been living in the apartment until the day he was kicked out.

2. *The State failed to produce any evidence creating a reasonable inference that Defendant was still homeless on Friday June 21.*

¶ 30　　　　Alternatively, the State could have presented evidence that Defendant intended to lie, not about the building number *per se*, but about the duration of his stay in the apartment. That is, one could *suspect* that Defendant moved into the apartment after Friday June 21, residing there for less than five days, but that he reported Friday as his move-in date to hide his failure to sign the homeless log that Friday, as he would have been required to do. Indeed, one may have a *suspicion* that Defendant lied for this very purpose. But the State did not meet its burden of presenting evidence from which the jury could *reasonably infer* that Defendant was, in fact, homeless on Friday June 21. Indeed, the only evidence offered by the State that was before the jury as to where Defendant was living between June 21 and June 25 showed that he was living in Building 602, at least during the latter part of that period. But any other belief as to Defendant's residency status during this period would be based on suspicion. And our law does not allow a defendant to be convicted on mere suspicion.

3. *The State failed to present evidence that Defendant lied to hide the fact that he*

*was living within 1000 feet of a school, which he was prohibited from doing.*

¶ 31    Assuming Defendant intentionally lied, another possible motive may be that he misreported for the purpose of hiding the fact that he was living within 1000 feet of a school.  That is, one might suspect that Building 604 (the address he reported) is just outside 1000 feet from a school, whereas Building 602 (where he was actually living) is not.  Indeed, as noted by the majority, the State originally charged Defendant with residing within 1000 feet of a school.  But the State abandoned this charge and, otherwise, did not put forth any evidence regarding the proximity of either Building 602 or Building 604 to a school.

¶ 32    I have carefully reviewed the evidence and tried to think of other motives which might support the jury's verdict.  I do not believe the State or the majority have shown how it can be reasonably inferred from the evidence any particular illicit purpose on the part of Defendant or demonstrating exactly how the Sheriff's Office was deceived by his misreport.